UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CADUCEUS, INC., a/k/a Caduceus Health,<br><br>  Plaintiff,<br><br>v.<br><br>UNIVERSITY PHYSICIAN GROUP, a/k/a Wayne State University Physician Group,<br><br>  Defendant. | Civil Action No. 23-3415 (MEF)(LDW)<br><br>OPINION and ORDER |

Table of Contents

I.   Background
    A.   Procedural History
    B.   The Parties
    C.   The Dispute
II.  Personal Jurisdiction: General Principles
III. General Jurisdiction
IV.  Specific Jurisdiction
    A.   Legal Principles
    B.   Contract Claims: The Three-Prong Test
        1.   Prong One: Purposeful Availment
            a.   The Run-Up to the Contract
            b.   Performance of the Contracts
        2.   Prong Two: Arise From or Relate To
        3.   Prong Three: Fair Play and Substantial Justice
        4.   Conclusion

\* \* \*

A company sued for breach of contract.

The defendant has moved to dismiss, arguing the Court does not have personal jurisdiction over it.

The motion is denied without prejudice, to allow for jurisdictional discovery.

\* \* \*

### I. Background

#### A. Procedural History

The Plaintiff[1] filed a complaint in state court, and the Defendant[2] removed the case to federal court.

The Defendant has now moved to dismiss for lack of personal jurisdiction.

#### B. The Parties

The Defendant is a medical practice that employees around 400 doctors. See Declaration of Grant Knaggs (November 17, 2023) ("Knaggs Decl.") ¶ 4. It is incorporated in Michigan. See Second Amended Complaint ¶ 23. Its principal place of business is Michigan. See id.

The Plaintiff is a claims management company. See Knaggs Decl. ¶ 5. It is incorporated in Delaware. See Second Amended Complaint ¶ 21. Its principal place of business is New Jersey. See id.

#### C. The Dispute

The Defendant and the Plaintiff entered into a contract. See id. at ¶ 1. Under the contract, the Plaintiff was to help the Defendant with processing medical bills issued to patients. See id.

The Plaintiff has sued the Defendant for breach of contract.

---

[1] The Plaintiff is Caduceus, Inc., a/k/a Caduceus Health.

[2] The Defendant is University Physician Group, a/k/a Wayne State University Physician Group.

2

The Plaintiff's core allegations: (1) it was not paid; (2) the contract was terminated in bad faith; and (3) when the Plaintiff requested information to satisfy itself that the Defendant was in compliance with applicable laws, the Defendant refused to provide documents it was contractually required to. See id. at ¶¶ 9-10, 12, 16-18.

## II. Personal Jurisdiction: General Principles

A federal court may exercise personal jurisdiction to the same extent as state courts in the state where the federal court sits. See Fed. R. Civ. P. 4(k)(1)(A); Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).

In New Jersey, that means jurisdiction over a non-New Jersey defendant reaches as far as the United States Constitution allows. See N.J. Court Rule 4:4-4; Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 469 (1986); see also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004).

Under the United States Constitution, there are two potentially relevant ways to establish personal jurisdiction: general and specific. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

Here, the Plaintiff alleges both general and specific jurisdiction. See Second Amended Complaint ¶ 25.

Each is taken up below.

## III. General Jurisdiction

As noted, the Defendant is a corporation.

A court has general jurisdiction over a corporation where the "corporation is fairly regarded as at home." Goodyear, 564 U.S. at 924.

A corporation is "at home" where it is incorporated and where it maintains its principal place of business. See Daimler AG, 571 U.S. at 137.

But the Defendant is not incorporated in New Jersey. See Second Amended Complaint ¶ 23. And it does not maintain its principal place of business, or any place of business, in New Jersey. See id.; Declaration of Jeffery Kohlitz (October 6, 2023) ("Kohlitz Decl.") ¶ 3.

3

How, then, can there be general jurisdiction here?

The Plaintiff's answer is presumably that the Supreme Court has left open the possibility that in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413, (2017) (cleaned up).

But that is not this case.

The Plaintiff does not allege that the Defendant has an office in New Jersey. Or that a large percentage of its employees work in the state. Or that it owns or uses any property in New Jersey.

Without any allegations along these lines, there can be no possible argument for general jurisdiction here. See BNSF, 581 U.S. at 414 (holding that a corporation is not "at home" in a state under the "exceptional case" doctrine even when it maintains 2,000 miles of railroad track in a particular state and employs 2,000 people in the state).

**IV. Specific Jurisdiction**

The Plaintiff's next jurisdictional claim is that the Court has specific jurisdiction over the Defendant. See Second Amended Complaint ¶ 25.

**A. Legal Principles**

Start the analysis with two relevant legal principles.

First, the three-prong test to determine whether there is specific jurisdiction:

> First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.

O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up).

The second legal principle is procedural.

4

On a motion to dismiss for lack of personal jurisdiction, discovery may be "available to ascertain the facts bearing on [the issue]." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3d Cir. 2009) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13 (1978)).

"[J]urisdictional discovery should be allowed unless the plaintiff's [jurisdictional] claim is clearly frivolous." Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) (cleaned up).

Indeed, there is, in some sense at least, a "presumption" of jurisdictional discovery as to defendants that are corporations. See Andover, 107 F.3d at 1042; cf. Metcalfe, 566 F.3d at 336 ("jurisdictional discovery [is] particularly appropriate where the defendant is a corporation"). The Defendant here is a corporation. See Second Amended Complaint ¶ 23.

### B. Contract Claims: The Three-Prong Test

In the Third Circuit, the specific jurisdiction inquiry is not trans-substantive. It varies based on whether the underlying substantive claim is a tort claim, an intentional tort claim, or a breach of contract claim. See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 130 (3d Cir. 2020).

The claims here are breach of contract claims.

The Court therefore analyzes the three-prong specific jurisdiction test in the manner prescribed by the Court of Appeals for contract cases.

That analysis follows.

#### 1. Prong One: Purposeful Availment

As to the first of the three prongs, the defendant "must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (cleaned up); see also Rose v. Ferrari N. Am., Inc., 2023 WL 4914313, at *1 (D.N.J. July 31, 2023).

5

One such act is "the defendant deliberately . . . entering [into] a contractual relationship centered [in the forum state]."³  See Ford Motor, 141 S. Ct. at 1025.

To determine if the relationship is "centered" in the forum state, the Court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 168 (3d Cir. 2012) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)).⁴

This requires focusing on two categories of evidence.

First, evidence from the run-up to the contract --- as to where, for example, the "negotiations" took place.

Second, evidence as to where the contract was to be performed ("contemplated future consequences" and "the terms of the contract"), and where it was indeed performed ("the parties' actual course of dealing").

The Court focuses on these two categories of evidence below.

---

³ Because the relationship must in some way be "centered," Ford Motor, 141 S. Ct. at 1025, in the forum state, "[m]erely entering into a contract with a resident of a state, absent any indication that the contract was executed or performed there, is insufficient to justify the exercise of personal jurisdiction in that state." Aldossari v. Ripp, 49 F.4th 236, 259 (3d Cir. 2022); accord Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.").

⁴ Accord Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001) ("[W]e must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing."); Mellon Bank, 960 F.2d at 1223; Efofex, Inc. v. Realhub Inc., 2023 WL 3901575, at *4 (D.N.J. June 8, 2023).

6

#### a. The Run-Up to the Contract

What connections were there with New Jersey during formation of the relevant contracts?

Start with where the contracts were signed.[5]

Several contracts are relevant here.  A legacy accounts receivable platform agreement.  See Knaggs Decl. ¶¶ 14-15, 17-18.  A claims processing agreement.  See id. at ¶ 23.  And various statement of work agreements, for additional services.  See id. at ¶¶ 8, 28.

Each of these was executed by the Plaintiff in New Jersey, and at least two were sent to the Plaintiff in New Jersey.  See id. at ¶¶ 8, 13, 29, 37, Ex. G.[6]  See Control Screening, 687 F.3d at 168 (the plaintiff's execution of the contract in the forum state was a relevant contact to that state); Remick, 238 F.3d at 256 (closely similar).[7]

The next inquiry: in the lead-in to signing the contract, how much back-and-forth was there between (a) New Jersey and (b) the Defendant?[8]

A great deal.  Take seven examples.  First, "[the Defendant] contacted [the Plaintiff's] New Jersey-based representatives to commence discussions and negotiations of the [claims processing agreement]."  Knaggs Decl. at ¶ 12.  Second, "[b]y email . . .

---

[5] See Control Screening, 687 F.3d at 168 (suggesting consideration of this factor).

[6] The record does not say where the Defendant signed the agreements.  But at least one of the agreements was sent to the Plaintiff already signed by the Defendant for countersignature.  See Knaggs Decl. at ¶ 37.  The Defendant likely signed this agreement outside of New Jersey.

[7] Where the plaintiff signed a contract presumably cannot be the "only" contact with the forum state.  Walden v. Fiore, 571 U.S. 277, 285 (2014); cf. footnote 3.  But the plaintiff's signature was not the only forum state contact in Control Screening or Remick, and it is not the only such contact here.

[8] See Control Screening, 687 F.3d at 168 (suggesting consideration of this factor).

[the Defendant's agent] forwarded [to the Plaintiff's agent], who was based in . . . New Jersey, a draft of [the legacy accounts receivable platform agreement]." Id. at ¶ 13. Third, "[a]fter multiple negotiations and exchanges of drafts sent to [the Plaintiff's agent] based in New Jersey for review and comments, the [legacy accounts receivable platform agreement] was executed." Id. at ¶ 14. Fourth, "[the Defendant's] daily communications and contacts with New Jersey continued in conjunction with the negotiations of the [claims processing agreement]." Id. at ¶ 19. Fifth, "[b]y email . . . [the Plaintiff's agent] forwarded [the Defendant's attorney] an addendum to the [legacy accounts receivable platform agreement] from New Jersey." Id. at ¶ 20. Sixth, "[b]y email . . . [the Defendant's attorney] emailed [the Plaintiff's agent] in New Jersey the latest draft of the [claims processing agreement]." Id. at ¶ 21. Seventh, "[b]y email . . . [the Plaintiff's agent] emailed [the Defendant's attorney] the final [claims processing agreement]." Id. at ¶ 22.[9]

For now, this is enough. See, e.g., Remick, 238 F.3d at 256 (specific jurisdiction over a contract claim where there were repeated "informational communications" involving the forum state office).

---

[9] The Defendant invites the Court to discount the interactions described in the text. The argument: "dealings with [the Plaintiff] occurred either electronically, telephonically, or in person [outside of New Jersey]." Kohlitz Decl. ¶¶ 5, 10. But "[i]n modern commercial business arrangements, . . . communication by electronic facilities, rather than physical presence, is the rule. Where these types of long-term relationships have been established, actual territorial presence becomes less determinative." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150-51 (3d Cir. 2001); cf. Mellon Bank, 960 F.2d at 1223 ("When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (cleaned up).

8

The last inquiry: in connection with the execution of the contract, how much time did the Defendant spend interacting with the New Jersey Plaintiff? [10]

Plenty. The negotiations between the parties began three months before the execution of the relevant contracts. See Knaggs Decl. ¶¶ 12, 14. During that time, there were "multiple communications" between the Defendant and the New Jersey Plaintiff about the claims processing agreement and the "relationship in general." Id. at ¶ 12. Moreover, the parties worked to amend the relevant contracts during the four years they were in place between them. See Knaggs Decl. ¶¶ 8, 19, 28-29.

At this stage, this is again sufficient. See Control Screening, 687 F.3d at 168 (that the contract at issue was a "continuation of an uninterrupted four year business relationship" weighed in favor of specific jurisdiction).

### b. Performance of the Contracts

Under the purposeful availment prong, the second relevant category of evidence is proof of connections between (a) the forum state and (b) performance of the contracts. See Part IV.B.1.

Where did the parties anticipate the relevant contracts were to be performed, and where were they in fact performed?

To a large extent: in New Jersey.

The Defendant contracted with a New Jersey-based company. See Knaggs Decl. ¶¶ 12, 17, 23. A number of the company's employees working on the contracts were based in New Jersey. See id. at ¶¶ 13, 37, 51. And throughout the duration of the contractual relationship, four years, the parties continued to send and receive emails and other communications to and from New Jersey. See Knaggs Decl. ¶¶ 25, 31, 33-36.[11]

---

[10] See Control Screening, 687 F.3d at 168 (suggesting consideration of this factor).

[11] The question of where a service contract is performed might sometimes raise potentially hard factual or legal questions.

9

These are meaningful connections to New Jersey.

And they were not obscure to the Defendant. Cf. Ford Motor, 141 S. Ct. at 1025 (describing "fair warning" basis of personal jurisdiction law). Two of the contracts at issue here noted explicitly that the Plaintiff was based in New Jersey. See Knaggs Decl. Ex. B at 1, Ex. D at 1. The email signature of the Plaintiff's representative --- who sent and received emails from the Defendant's representative --- indicated the Plaintiff was in New Jersey. See Knaggs Decl. Ex. C at 2. And the Plaintiff submitted invoices to the Defendant that bore a New Jersey address. See Knaggs Decl. ¶ 26.

For now, this is enough. See Control Screening, 687 F.3d at 168 (purposeful availment where the contracted-for services were performed in the forum state, and the defendant sent at least eleven emails to the forum-state entity).

### 2.  Prong Two: Arise From or Relate To

The second of the three prongs of the specific jurisdiction test, see Part IV.A above, is that the "plaintiff's claims must arise out of or relate to" the defendant's contacts in the forum state. Danziger, 948 F.3d at 129.

In contract cases, this prong is satisfied by showing the "defendant's contacts with the forum [were] instrumental in . . . the formation of the contract[.]" Id. at 130 (emphasis in original); accord, e.g., Schlafly, 2022 WL 1261319, at *2. This requires, in essence, a showing of "proximate causation." Danziger, 948 F.3d at 130.

---

Why? Because especially in a remote-work era, people may be working on a project from a large number of disparate places. And moreover: one contractual party may not know where its counter-party's employees are doing their work. Cf. Ford Motor, 141 S. Ct. at 1025 (describing "fair warning" basis of personal jurisdiction law). These issues, at least on the current record, are not live ones here. Virtually all of the work at issue seems to have been performed in New Jersey.

10

As laid out above in Part IV.B.1.a, the evidence is ample, at least for now, that the Defendant's New Jersey contacts were instrumental to the formation of the contract.[12]

### 3. Prong Three: Fair Play and Substantial Justice

As to the third prong, "[t]he existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477); see also Rose, 2023 WL 4914313, at *5.

For this prong, the Defendant makes no argument. The "presumption" is therefore not rebutted.

### 4. Conclusion

The evidence summarized above is sufficient to establish that the Plaintiff's specific jurisdiction argument is not "clearly frivolous." Andover, 107 F.3d at 1042. The current evidence of New Jersey links to contract formation and performance is good enough to clear the first hurdle, purposeful availment. See Part IV.B.1. So too with the evidence of contract "formation" under the second standard, arising from or relating to. See

---

[12] Two things. First, under Danziger, the second prong of the three-prong specific jurisdiction test can also be satisfied if contacts with the forum state were "instrumental in . . . the contract['s] breach." 948 F.3d at 130 (cleaned up). Because the Court concludes the Defendant's contacts were instrumental to the formation of the contract, it need not consider whether the Defendant's contacts with the forum state were also instrumental to the breach. See id. Second, there may be some tension between Danziger's "proximate causation" standard and the Supreme Court's later decision in Ford Motor, which suggests causation may not be necessary. See Ford Motor, 141 S. Ct. at 1026; see generally Grant Indus., Inc. v. Isaacman, 2022 WL 2358422, at *10 n.11 (D.N.J. June 30, 2022) (describing different approaches to possible tension created by Ford Motor). But the issue does not need to be reached now. This is because the Court concludes jurisdictional discovery is appropriate here even under the harder-to-satisfy Danziger standard.

11

Part IV.B.2. And the third prong of the specific jurisdiction test is not contested. See Part IV.B.3.

Is the evidence put forward to this point enough to actually establish personal jurisdiction? That may potentially be a closer question.

But courts are expected to avoid potentially difficult legal questions when they can. See, e.g., Eccles v. Peoples Bank of Lakewood Vill., Cal., 333 U.S. 426, 432 (1948). And all the more so when the legal questions are constitutional, see Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988), as they are here.[13]

The Court will therefore order jurisdictional discovery.

> At the close of [jurisdictional] discovery, the Court can decide any jurisdictional motions to dismiss against the backdrop of a fuller factual record. This factual development is likely to clarify the legal issue, by making it more concrete and less abstract. See Fortson v. Toombs, 379 U.S. 621, 631, amended, 380 U.S. 929 (1965) (cleaned up) ("constitutional questions are not to be dealt with abstractly"); see also Thorpe v. Hous. Auth. of City of Durham, 393 U.S. 268, 284 (1969) ("We do not sit . . . to decide abstract, hypothetical or contingent questions or to decide any constitutional question in advance of the necessity for its decision.") (cleaned up).

Prestan Products LLC, 2024 WL 278985 at *5.

\* \* \*

The motion to dismiss is denied to allow for jurisdictional discovery. This is without prejudice to a motion being made later, under Rule 12(b)(2) or Rule 12(b)(6), after a presumably

---

[13] The bar for getting jurisdictional discovery is set relatively low, see Andover, 107 F.3d at 1042, to avoid unnecessarily reaching abstract constitutional questions. There are other reasons, too. See, e.g., Prestan Products LLC v. Innosonian America, LLC et al., 2024 WL 278985, at *5 n.17 (D.N.J. Jan. 25, 2024).

12

short period of time during which focused jurisdictional discovery will get underway and be completed.

IT IS on this 26th day of January, 2024, so **ORDERED**.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Michael E. Farbiarz, U.S.D.J.